UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD C. JOHNSON,

     Plaintiff,

v.

HEIDI WASHINGTON, et al.,

     Defendants.

Case No. 22-12360
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DISMISSING COMPLAINT [1] AND
GRANTING LEAVE TO AMEND**

---

Ronald C. Johnson says that he was wrongfully prohibited from participating in the Prisoner Observation Aide program at Macomb Correctional Facility, where he is currently incarcerated. Johnson says that after being on the program's waitlist for years, he was told he was not qualified because of the score assigned to him under the Prisoner Rape Elimination Act (PREA). According to Johnson, when he asked for more information about his PREA assessment, he was told that no prison official could discuss his score with him pursuant to Michigan Department of Corrections regulations. Johnson claims that his PREA assessment should not have resulted in any prohibitive score based on his criminal history or his behavior in prison, and that Macomb Correctional is using that incorrect score to justify his prohibition from the program.

So Johnson sued various prison officials, including Heidi Washington (the Director of the MDOC), "R. Patton" (Director of Classification at Macomb

Correctional), and Eric Herbert (the PREA Program Coordinator at Macomb Correctional). He alleges violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment and the Americans With Disabilities Act.

Because Johnson fails to state a claim, the Court will dismiss his complaint. However, as will be explained, the Court will grant Johnson leave to amend his complaint with respect to his Equal-Protection claim regarding his PREA score.

## I.

Johnson's claims focus on his prohibition from the Prisoner Observation Aide (POA) program.

Incarcerated people who are assigned to the POA program are tasked with observing other incarcerated people who require one-on-one observation due to their mental health. The POA program is a work assignment, but an incarcerated person who is a POA can also hold another work assignment at the same time. As Johnson recognized, the waitlist to be assigned to the POA program is long and it could be months or years until someone is assigned that position, even if they are qualified. (*See* PageID.3.)[1]

Johnson says that when he first arrived at Macomb Correctional Facility in 2017, he applied to be a POA and was put on the waitlist. (PageID.3.) Having not been assigned to the program in 2019, Johnson checked with Patton, the Director of

---

[1] Unless indicated otherwise, all record citations are to Johnson's complaint, ECF No. 1.

Classification at Macomb Correctional, and Patton said Johnson was still on the waitlist.

In 2021, Patton posted a notice requesting that those who were interested in being a POA send her a kite. (PageID.4.) At that time, Johnson asked Patton why he had not been approved to be a POA despite being on the waitlist since 2017. (*Id.*) Patton told Johnson that his PREA score made him ineligible to work as a POA. (*Id.*)

The PREA "required, as of August 2013, that all prisoners be assessed for their potential to be a sexual assault victim or aggressor." *See McCracken v. Haas*, 324 F. Supp. 3d 939, 943 (E.D. Mich. 2018) (citing 42 U.S.C. § 15601, *et seq.*). The score Johnson received as a result of this assessment is what Johnson says made him ineligible to be a POA. According to Johnson, an incarcerated person can only be assessed a score under the PREA if they are a potential aggressor or victim. (PageID.6.) He believes he should not have been assessed a PREA score because he "has never been either an aggressor or a victim during the entire time he has been a prisoner within the MDOC, and there can be absolutely nothing in his prison record that indicates anything to the contrary." (PageID.6.)

Confused that he was given a PREA score, Johnson asked Patton what his score was and why he was assessed that way. (PageID.5.) Patton responded that Michigan Department of Corrections regulations forbid its employees from discussing an incarcerated person's PREA score with them. (*Id.*) Johnson next turned to his unit counselor for an explanation and was met with the same response. (*Id.*) So Johnson

3

finally contacted Herbert, the Coordinator of the PREA program at Macomb Correctional, about his score, but Herbert never responded. (*Id.*)

Johnson then turned to the prison's grievance process but was denied at all three steps. (PageID.5–6.) So he filed this complaint in federal court.

## II.

In addition to his complaint, Johnson also applied to proceed without prepayment of costs and fees. (ECF No. 2.) Under 28 U.S.C. § 1915(a)(1), the Court may authorize commencement of an action without prepayment of fees and costs if the plaintiff demonstrates that he cannot pay such fees. The Court has already authorized Johnson to proceed without prepayment of fees and costs. (ECF No. 4.)

But when a Court grants an application under 28 U.S.C. § 1915, it has an additional responsibility: screen the complaint and decide whether it "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B); see also *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). In deciding whether a complaint states a claim upon which relief may be granted, the Court must determine whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but the complaint must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

And although a pro se litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that leniency is "not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

With these standards in mind, the Court has reviewed Johnson's complaint and finds that it does not pass its screening.

## III.

Johnson claims that his denial from the POA program because of an allegedly incorrect PREA score violates the Equal Protection Clause, the Due Process Clause, and the Americans With Disabilities Act. The Court addresses each claim in turn.

### A. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment "prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Umani v. Mich. Dep't of Corrections*, 432 F. App'x 453, 458 (6th Cir. 2011).

Johnson has not pled that Defendants have made a distinction that burdens a fundamental right. "It is well established . . . that no prisoner has a constitutional right to a particular job or to any job." *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *see also Frantz v.*

*Michigan Dep't of Corr.*, No. 1:11-CV-584, 2011 WL 3100564, at \*7 (W.D. Mich. July 25, 2011) (collecting cases) ("Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison employment . . . based on the Fourteenth Amendment.").

And he has not pled facts stating that he was targeted because he is a member of a suspect class. Though Johnson states that Defendants improperly placed him in a "suspect class" by assigning him a PREA score, being assessed as a victim or an aggressor under the PREA is not a "suspect class" contemplated by the Equal Protection Clause. *See Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019) ("[W]hen the distinction adversely affects a suspect class, such as one defined by race, alienage, or national origin . . . the law will be sustained only if it is suitably tailored to serve a compelling state interest."); *see also Lyng v. Castillo,* 477 U.S. 635, 638 (1986) ("In determining whether a class is suspect or quasi-suspect, courts examine whether the class historically has been subjected to discrimination, whether members of the group exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group, and whether the group is a minority or politically powerless."). Johnson does not state he is part of such a class or that he is being targeted on that basis.

So Johnson is not entitled to proceed under either of the first two theories and the associated heightened scrutiny that accompanies them.

That leaves the "class of one" theory. "The Supreme Court has recognized successful equal protection claims brought by a 'class of one,' where the plaintiff

alleges that [1] [h]e has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015) ("To succeed on this type of claim, a plaintiff must allege either disparate treatment from similarly situated individuals and that the government actors had no rational basis for the difference," or that the "challenged government action was motivated by animus or ill-will[.]" (internal citations omitted)). Johnson's claim also fails under this theory as he does not allege that he has been treated differently from other similarly situated individuals or that Defendants were motivated by ill-will. Johnson's complaint does not identify any other incarcerated people who were allowed to be POAs despite their PREA scores or who were given a different PREA score though they were similar in relevant aspects to Johnson. *See Anders*, 984 F.3d at 1180 (dismissing class-of-one claim after addressing "the sufficiency of the Amended Complaint" in alleging plaintiff was similarly situated to those outside of the pled class). And Johnson does not provide any factual allegations showing that Defendants acted with ill-will. Thus, Johnson's class-of-one claim is not plausible as it does not allege disparate treatment.

Moreover, Defendants had a rational basis to bar Johnson from participating in the POA program—his PREA score, which implicates matters of prison security. As courts have recognized, decisions based on prison security are entitled to deference. *See Umani*, 432 F. App'x at 462 (citing *Overton v. Bazzetta*, 539 U.S. 126,

132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplishing them.")). This is further underscored by the broader purpose of the PREA. *See* 34 U.S.C. § 30302(2)–(3) (stating that, in part, the PREA is intended to "make the prevention of prison rape a top priority in each prison system" and "develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape"). The PREA score system and the consequences of such a score are in line with those overall goals, which implicate broader goals of security and safety. So it is not plausible that Defendants prohibited Johnson from participating in the POA program without any rational basis to do so.

Perhaps Johnson intends to make an Equal-Protection claim about the assignment of the PREA score itself, instead of his denial from the POA Program because of his score. But, as stated, Johnson has not plausibly pled that he has been treated differently from other inmates by being assigned a PREA score. And Johnson has failed to identify any constitutionally protected right to a certain or even a "correct" PREA score, and the Court has not found any authority for recognizing such a right. *See Johnson v. Purdy*, No. 19-13556, 2019 WL 6912759, *1–2 (E.D. Mich. Dec. 18, 2019) (dismissing Equal-Protection claim for denial of a special security classification in part because of the plaintiff's PREA score); *see also Stenberg v. Corizon Health, Inc.*, No. 20-cv-10674, 2022 WL 3204517, at *2 (E.D. Mich. Aug. 8, 2022) (denying request for MDOC to produce person that assigned plaintiff's PREA

score because "Stenberg did not identify any cases, on facts resembling those here, in which any court held that a defendant's wrongful assignment of a PREA score rose to the level of a constitutional violation," and thus such person would likely be entitled to qualified immunity). Further, the Sixth Circuit has held that an incarcerated person fails to state a claim when challenging their security designation under the Equal Protection Clause. *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (affirming dismissal of Equal-Protection claim for failure to state a claim because "classification of inmates as [Security Threat Group] members is rationally related to the legitimate state interest of maintaining order in prison"). So such a claim, if pled, fails as well.

In all, Johnson cannot assert an Equal-Protection claim based on a denial of a fundamental right because he has no constitutionally protected right to work in the POA program. He also has not plausibly stated he was targeted for being a member of a suspect class or that he was treated differently than similarly-situated individuals for no rational reason. So the Court dismisses Johnson's claim under the Equal Protection Clause.

The Court grants Johnson leave, however, to file an amended complaint describing his Equal-Protection claim regarding his PREA score if he is able to plead facts that plausibly show disparate treatment.

### B. Due Process

Johnson also claimed Defendants violated his procedural due process rights under the Fourteenth Amendment. Specifically, he stated he had a "vested liberty

interest" in participating in the POA program and that he "should have been provided more procedure to prove his eligibility for the POA program than he received." (PageID.9.) He also states that the MDOC should have to give him the information in his file used to deny him from the program. (*Id.*)

To bring a Fourteenth Amendment procedural due process claim, the plaintiff must plausibly plead that he "had a constitutionally protected interest[.]" *Golf Village North, LLC v. City of Powell, Ohio*, 42 F.4th 593, 598 (6th Cir. 2022).

Johnson fails to do so. As the Court explained, Johnson has no liberty or property interest in participating in the POA program that would give rise to a procedural due process claim. *See Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011) ("Dobbins' procedural due process claim against Besteman was properly dismissed for failure to allege a liberty or property interest." (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))); *see also Kincaid v. Ruhlman*, No. 14-2330, 2016 WL 11779615, at *2 (6th Cir. Apr. 1, 2016).

Other than a conclusory statement, Johnson has not plausibly pled that his classification under the PREA has led to an "atypical, significant deprivation in order to create a liberty interest." *Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Indeed, the Sixth Circuit has stated that "a simple transfer, issuance of a major misconduct ticket, and a higher security classification does not trigger a liberty interest." *Id.*

So Johnson's Due Process claim fails as he has not plausibly pled he had a liberty or property interest that was deprived by the State.

10

## C. ADA

Johnson also asserts a claim under the ADA because Defendants were "actively discriminating against a prisoner with a disability . . . when [they] prohibited [Johnson] from participating in the POA program," "refused [Johnson] the opportunity to challenge the information with which [they] based [their] refusal on," and signed off on this discrimination via their denial of Johnson's grievance and their administration of the PREA program. (PageID.11–12.)

The ADA prohibits discrimination "on the basis of disability." 42 U.S.C. § 12112(a). Johnson has not plausibly pled that he was discriminated against "on the basis" of his disability. The narrative he presents in his complaint is that he was denied participation in the program because of his PREA score. He makes no allegations that would allow the Court to infer that he had a qualifying disability or that his status as a disabled individual led any Defendant to take any action against him. And Johnson's conclusory statement that he "adequately meets each of" the requirements to make an ADA claim is not sufficient to survive the Court's screening of his complaint. *See Powell v. Columbus Med. Enterps., LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("But even assuming, as the district court did, that Powell is deemed disabled under the ADA in view of his ADHD diagnosis, he has not alleged sufficient facts to show that the defendants discriminated based on this disability.").

Thus, Johnson's claims under the ADA will also be dismissed.

**IV.**

For the foregoing reasons, the Court DISMISSES Johnson's complaint.

The Court grants Johnson 32 days to amend his complaint. Johnson may file an amended complaint if he is able to plead facts showing Defendants treated him differently by assigning him a PREA score in violation of the Equal Protection Clause. The Court does not grant Johnson leave to amend his Due-Process or ADA claims. If Johnson chooses to file an amended complaint, he must mail it by November 21, 2022.

SO ORDERED.

Dated: October 20, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE